**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CAROL ZIEGLER, on behalf of G.S.,

                              Plaintiff,

         v.                                                                No. 1:18-CV-0881
                                                                                      (GTS/CFH)
COLLEEN MULTER; ALISON WHITE;
SALLY SHIELDS; and RENSSELAER
CITY SCHOOL DISTRICT,

                          Defendants.

_____

**APPEARANCES:**

Carol Ziegler
P.O. Box 853
Rensselaer, New York 12144
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis Application

Plaintiff pro se Carol Ziegler commenced this action on behalf of G.S., a minor, on

July 27, 2018, with the filing of a complaint.  Dkt. No. 1 ("Compl.").  In lieu of paying this

Court's filing fee, plaintiff filed an application to proceed In Forma Pauperis ("IFP").  Dkt.

No. 4.  After reviewing plaintiff's IFP application, the undersigned determines that plaintiff

may properly proceed IFP.[1]

_____

[1] Plaintiff is advised that, despite her IFP status, she will still be required to pay any fees she incurs in this action, including copying fees and witness fees.

## II. Initial Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, this does not mean the Court is required to accept unsupported allegations devoid of sufficient facts or claims. Pleading guidelines are provided in the Federal Rules of Civil Procedure ("Fed R. Civ. P"). Specifically, Rule 8 provides that a pleading which sets forth a clam for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

>>(1) a short and plain statement of the grounds for the court's
>>jurisdiction . . .;
>>
>>(2) a short and plain statement of the claim showing that the
>>pleader is entitled to relief; and
>>
>>(3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

### B. Complaint

Here, plaintiff alleges that prior to the commencement of the 2017-2018 school year,

plaintiff confronted non-party school psychologist Beth Whitney regarding placing G.S., a student at Van Rensselaer Elementary School, within the Rensselaer City School District, in a smaller class setting. Dkt. No. 1-2 at 1. Ms. Whitney suggested that they try G.S. in a larger classroom setting, and, if she did not like it after one month, the school would transfer her to a smaller classroom. Id. at 1-2. On September 13, 2017, G.S. fell into a "deep sleep" in her classroom. Compl. at 2; Dkt. No. 1-2 at 2. Her teachers could not wake her, so they "kept her in[ ] school[, and] walked her up and down the stairs." Compl. at 2. Defendant Nurse Alison White informed the teachers that G.S. was fine, and did not call plaintiff; instead, Nurse White called Child Protective Services ("CPS"). Id. CPS went to plaintiff's residence that night and informed her that the teachers had a hard time rousing G.S. Dkt. No. 1-2 at 2. Some time later,[2] the school modified G.S.'s school work because she did not complete her homework. Id.

On November 3, 2017, plaintiff received a phone call from the elementary school principal stating that G.S. would not wake up. Dkt. No. 1-2 at 3. Plaintiff went to the school, and G.S.'s teacher "push[ed] [her] away from [G.S.]" Id. School officials began inquiring about G.S.'s medical history, and plaintiff informed them that her allergies should be in her health chart on file. Compl. at 3; Dkt. No. 1-2 at 3. When asked if G.S. had taken any medications that morning, plaintiff informed them that G.S. had only taken her inhaler for asthma. Dkt. No. 1-2 at 3-4. G.S. was transported to the hospital. Dkt. No. 1-2 at 4. Plaintiff called her CPS caseworker and informed her of the day's events, and that

---

[2] Plaintiff does not specify when this occurred.

no one would tell her what happened to G.S.  Id.  A doctor[3] called the elementary school, and a school nurse[4] informed the doctor that plaintiff had "double dose[d]" G.S. on her medications.  Compl. at 3; Dkt. No. 1-2 at 4.  By the time CPS arrived at the hospital, there had been six more phone calls alleging that plaintiff had double-dosed G.S.'s medications. Dkt. No. 1-2 at 5.[5]

After this incident, plaintiff began home schooling G.S. because plaintiff was "afraid" to send her back to Van Rensselaer Elementary School.  Dkt. No. 1-2 at 5.  On December 19, 2017, defendant Colleen Multer called plaintiff regarding G.S.'s doctors.  Id.  Plaintiff alleges that six doctors received faxes from the school requesting G.S.'s medical information.  Id. at 5-6.  G.S.'s teachers told plaintiff that G.S. did not have blank stare seizures, which plaintiff alleges that G.S. does have, in addition to asthma, autism, ADHD, hypertension, bipolar disorder, and drug alcohol syndrome.  Id. at 6.  Plaintiff contends that these medical conditions were not in G.S.'s health file at school, and that the school had lost G.S.'s health file.  Id.

Plaintiff drafted a lesson plan for home schooling and gave it to non-party Steve Reese, who had been working with plaintiff concerning G.S.'s education.  Dkt. No. 1-2 at 6.  Defendant Superintendent Sally Shields refused to "give [plaintiff] the time of day."  Id. at 7.  Plaintiff found a new school for G.S. to attend, but Ms. Multer and Ms. Shields informed plaintiff that the school district would not approve of sending G.S. to any other

---

[3] Plaintiff does not identify the doctor or clarify whether this was a doctor from the hsopital.

[4] Plaintiff does not specify whether the doctor spoke with Nurse White or another school nurse.

[5] Plaintiff does not state who made or received these calls.

school, including a school for children with medical and special needs.  Id. at 7-8.

Plaintiff requests injunctive relief: that defendants permit G.S. attend a school for special needs, and also seeks $150,000 "for the stress and [harassment] the school put [her through]."  Compl. at 4.

### C. Capacity to Sue[6]

"It is 'well-established' that 'a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child.'"  Amanna v. Dummerston Sch., No. 5:17-CV-118, 2018 WL 1363838, at *2 (D. Vt. Mar. 13, 2018) (quoting Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005)); see Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child.").  "The choice to appear pro se is not a true choice for minors who under state law, see FED. R. CIV. P. 17(b), cannot determine their own legal actions."  Cheung, 906 F.2d at 61.

The undersigned concludes that so long as plaintiff appears pro se, she cannot represent G.S. in this action.  If plaintiff wishes to proceed on G.S.'s claims, she must retain an attorney to represent G.S.  Accordingly, it is recommended that all claims asserted on behalf of G.S., including any claims under the IDEA, ADA, or § 1983, be dismissed without prejudice and with the opportunity to renew should plaintiff retain

---

[6] Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

counsel for G.S.[7]

### D. Merits Analysis

The undersigned has performed a review of the merits of claims asserted on G.S.'s behalf so that the case can proceed expeditiously in the event that plaintiff retains counsel for G.S. The undersigned also reviews any claims plaintiff may be asserting on her own behalf, as plaintiff appears to have the capacity to represent herself on her own claims. Liberally construing plaintiff's complaint, she has alleged that defendants violated her and/or G.S.'s constitutional rights when they declined to (1) approve of plaintiff's home school plan, (2) permit G.S. to attend a special needs school, or (3) properly protect G.S. while she was in school.

### 1. IDEA

To the extent that plaintiff's complaint may be interpreted as attempting to set forth a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., the undersigned concludes that this claim cannot stand.[8] "The IDEA 'is the most recent Congressional enactment in an ambitious federal effort to promote the education

---

[7] The undersigned notes that "[a]lthough the Constitution guarantees criminal defendants a right to counsel in their criminal case, there is no constitutional right to counsel in a civil case." Justice v. Kuhnapfel, 982 F. Supp. 2d 233, 234 (E.D.N.Y. 2013) (citing In re Martin-Trigona, 737 F.2d 1254, 1260 (2d Cir. 1984)). As such, the undersigned is not obligated to provide plaintiff with an attorney.

[8] The Supreme Court held in Winkleman ex rel. Winkleman v. Parma City Sch. Dist. that "[p]arents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf." 550 U.S. 516, 535 (2007). Moreover, the Court held that "[i]t is beyond dispute that the relationship between a parent and child is sufficient to support a legally cognizable interest in the education of one's child." Id.

of handicapped children.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d

Cir. 2007) (quoting Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir.

1998)) (internal quotation marks omitted).

> The IDEA requires that states offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child, see [20 U.S.] § 1415(a), including the right "to examine all records relating to [the] child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child," id. § 1415(b)(1), written notice prior to any changes in the child's identification, evaluation or educational placement, id. § 1415(b)(3), "an opportunity to present complaints with respect to" such matters, id. § 1415(b)(6), and, whenever any such complaint is made, the right to "an impartial due process hearing . . . by the State educational agency or by the local educational agency," with corresponding rights to be accompanied and advised by counsel, to present evidence and cross-examine witnesses, to receive a written record of proceedings, and to receive written findings of fact and decisions. Id. § 1415(f)(1) & (h).

Polera v. Board of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir.

2002).

　　　"To meet these requirements, a school district's program must provide 'special

education and related services tailored to meet the unique needs of a particular child, and

be reasonably calculated to enable the child to receive educational benefits.'" Gagliardo,

489 F.3d at 107 (quoting Walczak, 142 F.3d at 122) (internal quotation marks omitted).

These services must be administered pursuant to an individualized education plan ("IEP"),

and implemented annually. See Gagliardo, 489 F.3d at 107 (citing 20 U.S.C. § 1414(d)).

"To meet these obligations and to implement its own policies regarding the education of

disabled children, [New York] has assigned responsibility for developing appropriate IEPs to local Committees on Special Education ('CSE'), the members of which are appointed by school boards or the trustees of school districts." Walczak, 142 F.3d at 123 (citing N.Y. EDUC. LAW § 4402(1)(b)(1) (McKinney's Supp. 1997-98) and Heldman v. Sobol, 962 F.2d 148, 152 (2d Cir. 1992)). In implementing an appropriate IEP for a student, the CSE must be mindful that the IDEA prefers "'mainstreaming' or educating children with disabilities '[t]o the maximum extent appropriate' alongside their non-disabled peers." Gagliardo, 489 F.3d at 108 (quoting 20 U.S.C. § 1412(a)(5)).

In New York State, parents or legal guardians who disagree with their child's IEP may challenge it in an "impartial due process hearing," Gagliardo, 489 F.3d at 108 (quoting 20 U.S.C. § 1415(f)), before an impartial hearing officer ("IHO") appointed by the local board of education. Id. (citing N.Y. EDUC. LAW § 4404(1)). "Only after the administrative procedures are exhausted may an aggrieved parent seek court review of the adequacy of the IEP." Matrejek v. Brewster Cent. Sch. Dist., 471 F. Supp. 2d 415, 418 (S.D.N.Y. 2007) (citing Riley v. Ambach, 668 F.2d 635, 640 (2d Cir. 1981)). A plaintiff's failure to exhaust his or her administrative remedies deprives a district court of subject matter jurisdiction over the action. See id. (quoting Engwiller v. Pine Plains Cent. Sch. Dist., 110 F. Supp. 2d 236, 245 (S.D.N.Y. 2000)).

As an initial matter, to the extent that plaintiff sues defendants Colleen Multer and Sally Shields in their individual capacities under the IDEA, plaintiff's claims must be dismissed. "It is well-established that [the IDEA is] meant to prevent discrimination by public agencies, not officials acting in their individual capacities." D.A. v. Houston Indep.

Sch. Dist., 716 F. Supp. 2d 603, 611 (S.D. Tex. 2009)).  Thus, insofar as plaintiff sues Ms. Multer and Ms. Shields in their individual capacities pursuant to the IDEA, it is recommended that these claims be dismissed with prejudice.

As to plaintiff's potential IDEA claims against Ms. Multer and Ms. Shields in their official capacities, these claims also cannot stand.  Courts in this Circuit have held that a plaintiff's IDEA claim against individual defendants in their official capacities must be dismissed as redundant where the plaintiff also has an IDEA claim against the school district.  See Jenn-Ching Luo v. Baldwin Union Free Sch. Dist., No. 10-CV-1985 (JS)(AKT), 2012 WL 728173, at *2 (E.D.N.Y. Mar. 5, 2012) (citing Anemone v. Metro. Tranps. Auth., 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006) (dismissing the plaintiff's IDEA claim against the individual defendants in their official capacities as it was redundant of the plaintiff's IDEA claim against the school district); B.D.S. v. Southold Union Free Sch. Dist., Nos. CV-08-1319 (SJF)(WDW), CV-08-1864 (SJF)(WDW), 2009 WL 1875942, at *21 (E.D.N.Y. June 24, 2009) ("Moreover, because the [school district] and/or the [New York State Board of Education] are the real parties in interest with respect to plaintiff's official capacity claims under the . . . IDEA, see generally Kentucky v. Graham, 473 U.S. 159, 165-166  (1985), the official capacity claims against the individual defendants are sua sponte dismissed with prejudice as redundant to the claims against the [school district] and/or [the New York State Board of Education].").  As such, it is recommended that plaintiff's potential IDEA claims against the individual defendants in their official capacities, as pleaded, be dismissed with prejudice as they are redundant to her claim against the Rensselaer City School District.  See B.D.S., 2009 WL 1875942, at *21 (dismissing the plaintiff's claims

against the individual defendants with prejudice).

Plaintiff's potential IDEA claim against the school district, as currently pleaded, also cannot proceed. The exhibits attached to plaintiff's complaint demonstrate that G.S. had an IEP in place for the 2017-2018 school year, and was enrolled in special education services. See Dkt. No. 1-2 at 39-49. Insofar as plaintiff disagreed with defendant Rensselaer City School District's modification of G.S.'s school work or their refusal to place her in a smaller classroom, there is no indication in the complaint that plaintiff sought to exhaust her administrative remedies under the IDEA by requesting an impartial due process hearing. See 20 U.S.C. § 1415(f); J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 112 (2d Cir. 2004) ("It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court, and the parties do not dispute the requirement. The process includes review by an impartial due process hearing officer and an appeal from that hearing."). Thus, plaintiff's IDEA claim cannot proceed.

Further, the undersigned finds that insofar as plaintiff attempts to allege an IDEA claim against the school nurse Alison White, she is not a proper party to such claim. "[T]he controversy over the propriety of the IEP and whether it deprives the student of an FAPE remains one between the [aggrieved party] . . . and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an FAPE and IEP is that of the relevant educational agency." B.J.S. v. State Educ. Dep't/Univ. of New York, 699 F. Supp. 2d 586, 599 (W.D.N.Y. 2010); see Y.D. v. New York City Dep't of Educ., No. 14CV1137-LTS, 2016 WL 698139, at *5 (S.D.N.Y. Feb. 19, 2016) ("Any

controversy concerning whether a given IEP provides a FAPE is one between the aggrieved student and the relevant local educational agency.").  As there is no evidence that Nurse White was involved in the formulation of G.S.'s IEP, she is not a proper party to the potential IDEA claim.  Accordingly, any potential IDEA claims against defendant Nurse Alison White must be dismissed with prejudice.

Moreover, to the extent that plaintiff requests $150,000 in damages, monetary damages are not available under the IDEA.  See Polera, 288 F.3d at 486 ("The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy — as contrasted with reimbursement of expenses — is fundamentally inconsistent with this goal . . . . We therefore hold that monetary damages are not available under the IDEA.").  Thus, plaintiff's request for monetary damages under the IDEA must be dismissed with prejudice.

In sum, it is recommended that, to the extent that plaintiff attempts to set forth a claim under IDEA against Rensselaer City School District, plaintiff's claim be dismissed without prejudice and with opportunity to amend to specify whether plaintiff exhausted her administrative remedies before filing this action.  As Nurse White had no role in the formulation or implementation of G.S.'s IEP, it is recommended that any potential IDEA claim be dismissed against her with prejudice.  See B.J.S., 699 F. Supp. 2d at 599 (concluding that, in an IDEA claim, the controversy is between the aggrieved party and the relevant educational agency who creates and implements the FAPE and IEP).  To the extent that plaintiff attempts to set forth an IDEA claims against Ms. Multer and Ms. Shields in their individual and official capacities, it is recommended that these claims be dismissed

with prejudice. Insofar as plaintiff's complaint may seek monetary damages under the IDEA, it is recommended that such demand be dismissed with prejudice.

## 2. ADA/Rehabilitation Act

To the extent that plaintiff's complaint may be interpreted as attempting to set forth a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., or Section 504 of the Rehabilitation Act,  29 U.S.C. § 794 et seq. on behalf of G.S.,[9] the undersigned concludes that such claims also cannot stand.  As an initial matter, the undersigned notes that both the ADA and Section 504 of the Rehabilitation Act protect "qualified individual[s] with a disability."  42 U.S.C. § 12132; 29 U.S.C. § 794(a).  The ADA establishes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act states that "[n]o otherwise

---

[9]The Second Circuit has not decided whether a parent or guardian may assert his or her own claim under the ADA and Section 504 of the Rehabilitation Act.  See Eskenazi-McGibney v. Connetquot Central Sch. Dist., 84 F. Supp. 3d 221, 229 (E.D.N.Y. 2015).  However, courts within this Circuit have recognized a claim for associational discrimination under the Rehabilitation Act . . . ."  Id. (citing Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 281 (2d Cir. 2009); see McGRX, Inc. v. Vermont, No. 5:10-CV-1 (CR), 2011 WL 31022, at *6 (D.Vt. Jan. 5, 2011) ("Because Plaintiff's generalized allegations of advocacy on behalf of disabled Medicaid recipients fail to state a claim for associational discrimination under the ADA and RA, and because Plaintiff has not otherwise established a violation of its own legally protected interests under the ADA and RA, Plaintiff's own discrimination claims must be dismissed."), aff'd, 452 F. App'x 74 (2d Cir. 2012) (summary order).  Here, the undersigned does not interpret plaintiff's complaint as alleging an ADA claim on behalf of plaintiff herself as there is no indication that she is a "qualified individual[s] with a disability" as defined in the statute.  See 42 U.S.C. § 12132; 29 U.S.C. § 794(a).  Further, she does not appear to be contending that she suffered a personal wrong as a result of her association with her disabled child.  See Eskenazi-McGibney, 84 F. Supp. 3d at 230 (concluding that the parents of a disabled minor had the requisite associational standing to adequately allege their own ADA claim where the parents had alleged that they were denied access to the school grounds "based on their association with JEM, their son with a disability.").

qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  As these two standards are nearly identical, courts generally consider the merits of these potential claims together.  See B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) (quoting McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012)).  "Under both statutes, schools are required to provide a free appropriate public education through special education and related services."  Eskenazi-McGibney, 84 F. Supp. 3d at 231.

"Federal regulations promulgated under § 504 require that a public school provide a free appropriate public education to each qualified handicapped person who is in the [school district's] jurisdiction, regardless of the nature or severity of the person's handicap."  34 C.F.R. § 104.33(a).  An "appropriate education" means "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy [§ 504 implementing regulations]."  34 C.F.R. § 104.33(b)(1).  "In order to show a violation of Section 504 or the ADA in the context of providing an education to a child with disabilities, a plaintiff must show that a school district 'acted with bad faith or gross misjudgment.'"  Maus v. Wappingers Cent. Sch. Dist., 688 F. Supp. 2d 282, 301 (S.D.N.Y. 2010) (citing Pinn v. Harrison Cent. Sch. Dist., 473 F. Supp. 2d 477, 483 (S.D.N.Y. 2007)).

Courts have held that where

14

> [the] plaintiffs do not plead an IDEA violation, it is well settled that plaintiffs must exhaust administrative remedies under the IDEA whenever they assert claims for relief available under the IDEA, regardless of the statutory basis of their complaint, and that the failure to do so deprives the court of subject-matter jurisdiction.

Parent v. Pittsford Cent. Sch. Dist., 237 F. Supp. 3d 82, 88 (W.D.N.Y. 2017) (quoting L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x 56, 57 (2d Cir. 2016) (summary order).

The IDEA exhaustion requirement applies to a plaintiff's ADA and Section 504 claims "'regardless of the statutory basis of their complaint.'" Frank v. Sachem Sch. Dist., 84 F. Supp. 3d 172, 188 (E.D.N.Y. 2015) (quoting Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 246 (2d Cir. 2008)); see also 20 U.S.C. § 1415(l) ("[B]efore the filing of a civil action *under such laws seeking relief that is also available under this subchapter [Subchapter II: Assistance for Education of All Children with Disabilities]*, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.") (emphasis added). "Thus, a claim under a different statute, such as the ADA, may still be subject to the exhaustion requirements of the IDEA to the extent that the ADA claim seeks relief that is 'available' under the IDEA." Frank, 84 F. Supp. 3d at 188 (citing Stropkay v. Garden City Union Free Sch. Dist., 593 F. App'x 37, 40 (2d Cir. 2014) (summary order) ("Where, as here, plaintiffs raise grievances related to the education of disabled children, they are obligated to exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act).") (internal quotation marks and citation omitted)).

Here, there is no indication as to whether plaintiff exhausted her administrative

remedies under the IDEA.  See subsection II.C.1. supra.  To the extent that plaintiff may seek to argue that the IDEA's exhaustion requirements do not apply to her potential ADA or Section 504 claims because those claims seek damages unavailable under the IDEA, the undersigned finds such an argument would be misplaced.  Facing the same question in Frank v. Sachem Sch. Dist., the Eastern District of New York concluded that "[w]here, as here, a plaintiff's claim relates to the placement or classification of his or her child, courts have applied the exhaustion requirements under the IDEA even when the claims seek[ ] [ ] relief not available under the IDEA."  Frank, 84 F. Supp. 3d at 189 (citing inter alia Baldessarre v. Monroe-Woodbury Cent. Sch. Dist., 820 F. Supp. 2d 490, 505 (S.D.N.Y. 2011) (applying exhaustion requirements of the IDEA to the plaintiffs' ADA claims because their claims "all relate to the identification, evaluation, or educational placement of Daniel, or his treatment by his teacher because of his disability, and therefore these claims all invoke Daniel's right to a free appropriate public education.").  The Court in Frank found that because the "gravamen" of the plaintiff's ADA claim was the Committees on Special Education's alleged improper classroom placement of the minor child, this claim fell "squarely within the ambit of the Due Process hearings afforded by the IDEA § 1415(b)(6)(A) and [N.Y. EDUC. LAW] § 4404."  Id. at 189-90.  Therefore, the Court concluded that even though the plaintiff sought monetary damages, the complaint alleged a deprivation of educational services that was within the purview of the IDEA; as such, the plaintiff's ADA claim was subject to the exhaustion requirements of the IDEA.  See id. at 190.

Similarly, here, plaintiff's request for monetary damages does not negate her

obligation to request an impartial due process hearing prior to commencing this action. As it is unclear whether plaintiff requested such hearing, it is recommended that, to the extent that plaintiff attempts to set forth a claim under the ADA or Section 504 of the Rehabilitation Act against defendant Rensselaer City School District, plaintiff's claim be dismissed without prejudice and with opportunity to amend to specify whether plaintiff exhausted her administrative remedies prior to filing this action.

Moreover, insofar as plaintiff attempts to set forth claims under the ADA and/or Section 504 of the Rehabilitation Act against defendants Ms. Multer and Ms. Shields in their individual capacities, these claims must be dismissed. It is well-settled that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits[.]" Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). As such, it is recommended that plaintiff's potential ADA and Rehabilitation Act claims against the individual defendants in their individual capacities be dismissed with prejudice.

Similarly, plaintiff cannot proceed against Ms. Multer or Ms. Shields in their official capacities. It has been held that ADA and Rehabilitation Act claims against individual defendants in their official capacities are "'merely duplicative of the claims against the [District], the real party in interest.'" Rekowicz ex rel. Congemi v. Sachem Cent. Sch. Dist., No. CV 11-1561(JS)(ETB), 2012 WL 4172732, at *7 (E.D.N.Y. July 2, 2012) (quoting A.M. ex rel. J.M. v. NYC Dept. of Educ., 840 F. Supp. 2d 660, 678 (E.D.N.Y. 2012)) (internal quotation marks omitted); see Emmons v. City Univ. of New York., 715 F. Supp. 2d 394, 408 (E.D.N.Y. 2010) ("The Court . . . dismisses with prejudice plaintiff's ADA and Rehab Act claims against the individual RFCUNY employees in their official capacities, because

17

they are wholly redundant to plaintiff's claims against RFCUNY itself.").  Thus, as plaintiff

names the Rensselaer City School District as a party to this action, it is recommended that

plaintiff's potential ADA and Rehabilitation Act claims against the individual defendants in

their official capacities also be dismissed with prejudice, as the Rensselaer City School

District is the "real party in interest."  Rekowicz ex rel. Congemi, 2012 WL 4172732, at *7.


### 3. Procedural Due Process

To the extent that plaintiff's complaint may be interpreted as attempting to set forth

a claim under 42 U.S.C. § 1983 against defendants for violation of plaintiff and/or G.S.'s

Fourteenth Amendment procedural due process rights by depriving G.S. of meaningful

access to a full and appropriate public education, the undersigned concludes that this

claim cannot stand.

> It is well settled . . . that a plaintiff asserting a constitutionally
> based § 1983 claim for procedural violations of the IDEA must
> establish a constitutional violation "outside the scope of the
> IDEA."  In other words, a plaintiff cannot prevail on a § 1983
> claim for violation of procedural due process under the
> Fourteenth Amendment if the violations for which she seeks
> redress are actionable under the IDEA.

Engwiller v. Pine Plains Cent. Sch. Dist., 110 F. Supp. 2d 236, 250-51 (S.D.N.Y. 2000)

(internal citation omitted).

Plaintiff's complaint does not demonstrate "a denial of any process due to her that

does not already fall within the ambit of § 1415 of the IDEA," as each claim seems to

challenge the educational services offered, or denied, by the school district.  Id. at 251; see

John M. v. Brentwood Union Free Sch. Dist., Nos. 11 CV 3634(PKC)(SIL), 12 CV

18

2603(PKC)(SIL), 2015 WL 5695648, at *12 (E.D.N.Y. Sept. 28, 2015) ("All of Plaintiffs'

. . . claims in their two federal actions concern the adequacy of the educational services

offered by the District, or Plaintiffs' procedural IDEA rights, and therefore fall squarely

within the ambit of the due process hearings afforded by the IDEA.").  Plaintiff's complaint

seems to suggest that the school district deprived G.S. of meaningful access to a full and

appropriate public education by (1) failing to approve a smaller classroom setting;

(2) denying plaintiff's home schooling plan; and (3) denying plaintiff's request to transfer

G.S. to a school for children with special needs.  See generally Compl.; Dkt. No. 1-2.

Plaintiff's allegations are of the kind that the IDEA was created to address.  See Cave, 514

F.3d at 245 ("Parents are specifically entitled to request a due process hearing in order to

present complaints as 'to any matter relating to the identification, evaluation, or educational

placement of the child, or the provision of a free appropriate education.'") (quoting 20

U.S.C. § 1415(b) (6)(A)).  As such, insofar as plaintiff may be attempting to bring her claim

pursuant to § 1983 for a violation of procedural due process, it is recommended that these

claims be dismissed with prejudice.


### 4. Failure to Protect

Plaintiff's complaint may be interpreted as attempting to set forth a failure to protect

claim on behalf of G.S. insofar as she contends that defendants acted inappropriately after

G.S. fell into a "deep sleep" twice during the school year.  See Compl. at 2; Dkt. No. 1-2

at 2.  However, this claim, as pleaded, must fail.  It is unclear from plaintiff's complaint

whether her failure to protect claim should be construed as arising under the IDEA, which

would require the exhaustion of administrative remedies.  See subsection II.D.1.  In Fry v. Napoleon Cmty. Sch., the Supreme Court of the United States held

> if . . . the remedy sought is not for the denial of a [Free Appropriate Public Education], then exhaustion of the IDEA's procedures is not required . . . .  And that is true even when the suit arises directly from a school's treatment of a child with a disability — and so could be said to relate in some way to her education.  A school's conduct toward such a child — say, some refusal to make an accommodation — might injure her in ways unrelated to a FAPE, which are addressed in statutes other than the IDEA.

__ U.S. __, 137 S.Ct. 743, 745 (2017).

Plaintiff seems to suggest that defendants failed to protect G.S. while she was at school, which resulted in at least one hospitalization.  See generally Compl.; Dkt. No. 1-2. The cause of G.S.'s hospitalization and her alleged falling into a "deep sleep" is unclear even to plaintiff.  See Dkt. No. 1-2 at 5.  Thus, the undersigned is unable to determine whether plaintiff's claim "could have [been] brought in a situation in which there [was] no obligation [for defendants] to provide a [free accessible public education]," wherein G.S. could have fallen into a "deep sleep" and the defendants could have failed to address it properly, notwithstanding G.S.'s disability.   Condit v. Bedford Cent. Sch. Dist., No. 16-CV-6566 (CS), 2017 WL 4685546, at *9 (S.D.N.Y. Oct. 16, 2017) (noting that the "Plaintiffs' claims could have brought in a situation in which there is no obligation to provide a FAPE, as [the minor child] could have been bullied, and the District could have failed to address it, notwithstanding his disability.") (internal quotation marks and citation omitted). As such, it is recommended that plaintiff's potential failure to protect claim pursuant to the IDEA be dismissed without prejudice and with opportunity to amend to determine whether

20

plaintiff exhausted her administrative remedies.

Insofar as plaintiff's potential failure to protect claim may be interpreted as arising under the substantive due process clause of the Fourteenth Amendment, the undersigned determines such claim cannot proceed.  Although school-aged children have a property interest in a public education that is protected by the Fourteenth Amendment, see Condit, 2017 WL 4685546, at *10, plaintiff does not suggest that defendants prevented G.S. from attending public school.  See Saggio v. Sprady, 475 F. Supp. 2d 203, 210 (E.D.N.Y. 2007) ("[T]he District did not exclude [the student] from attending school. It thus cannot be said that the District infringed upon her right to an education.").  "[N]or ha[s plaintiff adequately] alleged conduct by [d]efendants so egregious as to rise to the level of a substantive due process violation."  Conduit, 2017 WL 4685546, at *10.

Furthermore, the complaint fails to allege that defendants acted with deliberate indifference as the facts alleged do not suggest anything more than mere negligence, which does not give rise to the deprivation of a property interest under the Fourteenth Amendment.  S.C. v. Monroe Woodbury Cent. Sch. Dist., No. 11-CV-1672 (CS), 2012 WL 2940020, at *6 (S.D.N.Y. July 18, 2012); see Conduit, 2017 WL 4685546, at *10 (concluding that the plaintiff's amended complaint failed demonstrate that the defendants were deliberately indifferent rather than merely negligent).

Thus, it is recommended that any potential failure to protect claim arising under the substantive due process clause must be dismissed without prejudice.  Accordingly, to the extent that plaintiff's complaint may be interpreted as raising a failure to protect claim arising under the IDEA, it is recommended that plaintiff's claim be dismissed without

prejudice and with opportunity to amend to determine whether plaintiff exhausted her administrative remedies. Although plaintiff's complaint, as pleaded, fails to demonstrate that defendants' conduct amounted to more than mere negligence, and thus does not suffice to state a claim under the Fourteenth Amendment, in light of special solicitude, the undersigned recommends that, insofar as plaintiff's failure to protect claim can be interpreted as arising out of the substantive due process clause or under a deliberate indifference standard under the Fourteenth Amendment, it be dismissed without prejudice and with opportunity to amend should plaintiff wish to allege facts demonstrating that defendants' conduct amounted to more than mere negligence.

### 5. Eleventh Amendment Immunity and Money Damages

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Moreover, a suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917,

921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Insofar as plaintiff's potential ADA claim seeks money damages, courts have held that "a private plaintiff may not maintain a cause of action for money damages against New York State for any violation of Title II of the [ADA]."  A.A. v. Board of Educ., Cent. Islip Union Free Sch. Dist., 196 F. Supp. 2d 259, 265 (E.D.N.Y. 2002) (citing Garcia v. SUNY Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001)).  However, money damages are available if a plaintiff can demonstrate that the Title II ADA violation "was motivated by either 'discriminatory animus or ill will due to disability.'"  Id.  Because plaintiff has failed to specifically allege that defendants' conduct was motivated by "discriminatory animus or ill will," id., it is recommended that insofar as plaintiff's ADA claim requests money damages, the claim be dismissed without prejudice and with opportunity to amend to specifically allege whether defendants acted with discriminatory animus or ill will.[10]

Finally, with respect to plaintiff's potential § 1983 claims, insofar as plaintiff seeks monetary damages against defendants in their official capacities, the Eleventh Amendment

---

[10] To the extent that plaintiff may set forth a claim for money damages under Section 504 of the Rehabilitation Act, it is well-settled that Section 504 does not bar money damages.  See Zahran ex rel. Zahran v. New York Dept. of Educ., 306 F. Supp. 2d 204, 210 n.2 (N.D.N.Y. 2004) (citing 42 U.S.C. § 2000d–7) (concluding that Congress enacted Section 504 pursuant to their authority under the spending clause, and, "[al]though asserted under a section similar to Title II of the ADA, [these claims are] not barred by the Eleventh Amendment.").

bar applies.  See Kentucky, 473 U.S. at 166.  Accordingly, to the extent that plaintiff seeks monetary damages against defendants in their official capacities for her potential § 1983 claims, it is recommended that such demands be dismissed with prejudice.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby,

**ORDERED**, that plaintiff's motion to proceed in forma pauperis (Dkt. No. 4) is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED**:

(1) Insofar as plaintiff asserts claims on behalf of G.S., such claims be **DISMISSED WITHOUT PREJUDICE** and with the opportunity to renew should plaintiff retain legal representation for G.S., and that plaintiff be permitted thirty (30) days from the date of the District Judge's Order reviewing this Report-Recommendation and Order to retain an attorney for G.S., and for the attorney to enter his or her appearance, and that (a) if plaintiff fails to retain an attorney for G.S. within this time frame, all claims on G.S.'s behalf be dismissed without prejudice and without further order of the Court, and (b) if plaintiff does retain an attorney for G.S. within the thirty (30) day time frame and the attorney enters an appearance within that time frame, the Clerk of the Court is to return this case to the Magistrate Judge;

(2) Insofar as plaintiff (a) sets forth claims seeking injunctive relief under the IDEA and ADA, or (b) injunctive and/or monetary relief under Section 504 of

the Rehabilitation Act, these claims be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend to specify whether plaintiff exhausted her administrative remedies prior to filing this action;

(3) Insofar as plaintiff sets forth a claim for monetary damages under the ADA against defendant Rensselaer City School District, this claim be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend to allege whether defendants acted with discriminatory animus or ill will;

(4) Insofar as plaintiff sets forth a claim for monetary damages under the IDEA, this claim be **DISMISSED WITH PREJUDICE**;

(5) Insofar as plaintiff sets forth § 1983 claims for failure to protect, these claims be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend to determine whether plaintiff exhausted her administrative remedies under the IDEA or, in the alternative, to allege facts demonstrating that defendants' actions amounted to more than mere negligence;

(6) Insofar as plaintiff sets forth claims under the IDEA, ADA, and/or Section 504 of the Rehabilitation Act against defendants Colleen Multer and Sally Shields in their individual or official capacities, these claims be **DISMISSED WITH PREJUDICE**;

(7) Insofar as plaintiff sets forth § 1983 claims for violations of her procedural due process rights based on educational services offered, or denied, by defendant Rensselaer City School District, these claims be **DISMISSED WITH PREJUDICE**;

(8) Insofar as plaintiff seeks monetary damages for § 1983 claims against individual defendants in their official capacities, these claims be **DISMISSED WITH PREJUDICE**;

(9) Insofar as plaintiff sets forth an IDEA claim against defendant Alison White, this claim be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff be given thirty (30) days from the date of the District Judge's Order reviewing this Report-Recommendation and Order to file an amended complaint on all claims dismissed without prejudice; and it is further,

**RECOMMENDED**, that if plaintiff fails to file an amended complaint within thirty (30) days of entry of the District Judge's Order reviewing this Report-Recommendation and Order, the Clerk of the Court enter judgment dismissing this action without further order of this Court, and if plaintiff does file an amended complaint within this time frame, the Clerk of the Court is to return this case to the Magistrate Judge for further review; and it is it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.[11]

---

[11] Should the District Judge permit plaintiff the opportunity to file an amended complaint, plaintiff is advised that, if she then chooses to file an amended complaint, any amended complaint she may file will supercede and replace entirely the original complaint he filed in this action. Therefore, the amended complaint must include all the facts and claims she wishes the Court to consider, including any claims that from the original complaint that were permitted to proceed, as well as any relevant exhibits the undersigned wishes the Court to consider. See N.D.N.Y. L.R. 7.1(a)(4) ("Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects. A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference.").

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[12]

Dated: November 14, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[12] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).